IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:25-CV-00011-KDB-SCR

| | |
|---|---|
| CALVIN TRULL,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>BOARD OF TRUSTEES OF THE MCCREARY MODERN, INC. EMPLOYEE STOCK OWNERSHIP PLAN, AND MCCREARY MODERN, INC.,<br><br>　　　Defendants. | <u>**MEMORANDUM AND ORDER**</u> |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 12). The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** the motion.

I.　　LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor.

1

*See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448. The Court may also consider documents attached to a motion to dismiss when they are "integral and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Calvin Trull is a former employee of McCreary Modern, Inc. ("McCreary"), who participated in the company's Employee Stock Ownership Plan (the "Plan") between 2019 and 2024. Complaint ("Doc. No. 1") at ¶¶ 1, 3. McCreary sponsors and administers the Plan, which is governed by ERISA pursuant to 29 U.S.C. § 1002(2)(A), § 1002(34), and § 1007(d)(6). *Id.* at ¶¶ 2, 4. Established in 2008, the Plan "provide[s] a retirement benefit to employees in the form of partial ownership of McCreary." *Id.* at ¶ 9. McCreary distributes profits to shareholders in the form

of cash dividends added to a shareholder's account balance in the Plan. *Id.* at ¶ 13. The use or investment of those dividends lies solely within the discretion of the Plan Trustees, subject to McCreary's oversight. *Id.* at ¶ 14.

Each Plan participant holds an individual account composed of a portion of the shares held by the Plan–which collectively represent 30% of McCreary's outstanding shares–and the cash dividends (and proceeds thereof) allocated to that participant. *Id.* at ¶¶ 9, 13. Shares are subject to a five-year vesting schedule. *Id.* at ¶ 11. Employees who depart prior to full vesting forfeit their shares back to the Plan for reallocation among remaining participants, though they are entitled to the cash dividends and related proceeds in their account. *Id.* When a vested employee departs, the value of their shares, along with any cash dividends and related proceeds, is paid out from the cash held in the Plan. Doc. No. 12-1 at 5–6. The Plan then repurchases those shares and reallocates them to remaining participants, a process referred to as "share recycling." *Id.* When contributed dividends exceed the cash required for repurchase obligations, the resulting surplus forms a "cash buffer" in the account. *Id.* at 6. As of 2023, the Plan included over 1,100 participants. Doc. No. 1 at ¶ 12.

Trull alleges that McCreary has performed well since 2015, leading to an accumulation of the cash buffer in the Plan, ranging from $8 million to $16 million since 2019. *Id.* at ¶ 16. He contends that Defendants allowed the cash to accumulate without pursing alternative investments, noting the Plan earned an average of 1.3% interest per year on cash between 2019 and 2023, while 3-month treasury bills averaged 1.9% over the same period. *Id.* at ¶¶ 18–19. Trull asserts that this failure to invest more effectively resulted in a Plan loss of millions of dollars in interest, and that Defendants thereby violated ERISA by failing to act as a "prudent fiduciary" would have under similar circumstances–specifically by failing to diversify the cash buffer component of the Plan.

3

*Id.* at ¶¶ 20, 74. Defendants have moved to dismiss, arguing that unlike most ERISA fiduciaries, Employee Stock Ownership Plan ("ESOP") fiduciaries are expressly exempt from the duty to diversify under Supreme Court precedent. The Motion is fully briefed and ripe for this Court's review.

### III. DISCUSSION

The Employee Retirement Income Security Act of 1974 ("ERISA") permits employers to establish ESOPs, a form of employee pension plan that confers ownership interests in the company through shares of its stock. *See Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 769 (4th Cir. 2019), *as amended* (Mar. 22, 2019). Structured as a trust, an ESOP enables companies to contribute newly issued shares, existing shares, and cash to purchase shares on behalf of employees, who typically receive allocations based on salary and tenure. ESOPs are frequently employed as succession planning tools in closely held businesses, offering tax advantages to both the company and selling shareholders. Employees do not purchase the shares directly; rather, they vest over time and employees receive the value of their accounts upon retirement or separation from the company.

ERISA imposes fiduciary duties on all pension plan administrators, including those overseeing ESOPs, to "ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). One such requirement is that the fiduciary act in accordance with ERISA's "prudent man" standard of care. *Brundle,* 919 F.3d at 770 (additional citations omitted). Under this standard, "ESOP fiduciaries are subject to the duty of prudence just as other ERISA fiduciaries are." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014). Thus, an ESOP fiduciary must "discharge his duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

While fiduciaries of pension benefit plans generally must diversify investments of the plan assets "so as to minimize the risk of large losses," *see* § 1104(a)(1)(C), Congress acknowledged that ESOPs are "invest[ed] primarily in" employer stock, § 1107(d)(6)(A), and are therefore not diversified by design. *Dudenhoeffer*, 573 U.S. at 416. Accordingly, Congress has given ESOP fiduciaries a statutory exemption from some of the duties imposed on ERISA fiduciaries, including the duty to diversify. *Id.* Indeed, ERISA specifically provides that, in the case of ESOPs "the diversification requirement of [§ 1104(a)(1)(C)] and the prudence requirement (only to the extent that it requires diversification) of [§ 1104(a)(1)(B)] [are] not violated by acquisition or holding of [employer stock]." *Id.* at 416–417 (2014) (quoting § 1104(a)(2)).

Thus, an ESOP fiduciary is not obligated under § 1104(a)(1)(C) to "'diversif[y] the investments of the plan so as to minimize the risk of large losses' or under § 1104(a)(1)(B) to act 'with the care, skill, prudence, and diligence' of a 'prudent man' insofar as that duty 'requires diversification.'" *Id.* In other words, ESOP fiduciaries ordinarily cannot "be taken to task for failing to diversify investments, regardless of how prudent diversification would be under the terms of an ordinary non-ESOP pension plan."[1] *Moench v. Robertson*, 62 F.3d 553, 568 (3d Cir. 1995), *abrogated on other grounds by Dudenhoeffer*, 573 U.S. at 409.

---

[1] At least one court has identified a scenario in which the duty of prudence *could* require diversification of an ESOP's holdings. If the "ESOP was [the employees'] principal retirement asset ... and was entirely invested in the stock of their employer..., and their employer was bought in a stock-for-stock deal—so that all the assets of the ESOP became stock in the acquirer by a company that had a much higher debt-equity ratio than their (former) employer and as a result its stock price was much more volatile and its bankruptcy risk greater. Then, *even if the trustees did not predict the company's 'impending collapse,'* they might be required in the interest of the participants either to diversify the plan's stockholdings or to exchange the ... stock for Treasury

5

With that framework in mind, the Court turns to Trull's claims. Trull alleges that Defendants violated their fiduciary duties under 29 U.S.C. § 1104(a) and § 1105(a) when they maintained a cash buffer in the McCreary ESOP that he believes to be too large and too conservatively invested. To establish Defendants' liability for breach of fiduciary duty, Trull must show that: "(1) the Plan was an employee benefit plan under ERISA; (2) Defendants were fiduciaries of the Plan; and (3) Defendants breached their duties under ERISA, resulting in losses to the Plan." *Acosta v. Calderon*, No. CV ADC-16-0964, 2017 WL 4011962, at *4 (D. Md. Sept. 11, 2017).

Whether Defendants breached their fiduciary duties is the only element in dispute. Trull claims that Defendants breached their fiduciary duties under ERISA, causing losses to the Plan because the cash buffer earned interest at a low rate; therefore, the Plan lost the potential gains that could have come from investing all or part of that buffer more aggressively. To bolster his claims in opposition to the Motion to Dismiss, Trull includes the tax reporting forms of several "comparator" companies he believes to be "similarly situated" and which maintain only a de minimis cash buffer. Defendants, by contrast, contend that because ESOPs are exempt from diversification, they did not breach any fiduciary duties by not investing the Plan's cash buffer more aggressively. Moreover, they note that between 2018 and 2023, the cash buffer decreased nearly every year (and by almost 40% from 2020 to 2023) because the payouts and stock recycling costs not only exceeded the annual company contributions but were growing (from just over $3 million in 2018 to over $9.5 million in 2023). Doc. No. 12-1 at 7; *see also* Doc. No. 1 at 19.

---

bills." *Summers v. State St. Bank & Tr. Co.*, 453 F.3d 404, 410–11 (7th Cir. 2006) (quoting *Steinman v. Hicks,* 352 F.3d 1101, 1106 (7th Cir. 2003)) (emphasis in original). However, the events contemplated are substantially different than the facts alleged here.

Trull's claims appear to be a remedy in search of a wrong, failing to clear the high hurdle set by Congress and reinforced by the Supreme Court in *Dudenhoeffer*. Indeed, this is the very type of claim Congress sought to protect against when it exempted ESOPs from the diversification obligation arising from the fiduciary duty of prudence. Had the cash buffer been de minimis, as Trull suggests is not just permissible but *required*, the Plan may have been unable to adequately pay departing employees or repurchase shares. To hold Defendants accountable for diversifying the ESOP cash buffer–under the facts alleged–even though they are expressly not required to do so, would leave them "between a rock and a hard place and likely to be sued for imprudence either way if [they] guess[] wrong." *Perrone v. Johnson & Johnson*, 48 F.4th 166, 177 (3d Cir. 2022) (quoting *Dormani v. Target Corp.*, 970 F.3d 910, 915 n.4 (8th Cir. 2020)) (additional citations omitted). Under Trull's theory, "[i]f fiduciaries increase the cash buffer and then the stock price rises [or employee payouts and share repurchases are less than anticipated], plan participants might assert a duty-of-prudence claim against them for allowing the cash buffer to generate "investment drag." *Perrone,* 48 F.4th at 177 (quoting *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 793 (7th Cir. 2011)) (internal quotations omitted).

On the other hand, "if the fiduciaries hold the cash buffer steady or reduce it and then the stock price drops [or payouts and repurchases are higher than anticipated], plan participants might assert a duty-of-prudence claim for not increasing the cash buffer to mitigate losses." *Id.* Requiring an ESOP fiduciary to walk such a precarious tightrope, as Trull proposes, risks subverting Congress's objective to encourage employers to establish and maintain ESOPs. *See Dudenhoeffer,* 573 U.S. at 419. The court finds this premise untenable where, again, Defendants were under no

duty to diversify any part of the plan, let alone the cash buffer.[2] *See Dudenhoeffer,* 573 U.S. at 419 ("ESOP fiduciaries … need not diversify the fund's *assets*.") (emphasis added). Accordingly, Trull has failed to plausibly allege a breach of fiduciary duty, and his claims will be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 12) is **GRANTED**; and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 1, 2025

Kenneth D. Bell
United States District Judge

---

[2] Trull urges the Court adopt the reasoning in *Schultz v. Aerotech, Inc.*, No. CV 24-618, 2025 WL 563585 (W.D. Pa. Feb. 20, 2025), which addressed the same question of whether an ESOP fiduciary may be held liable for failing to diversify the plan's cash buffer. The *Schultz* court concluded that the plaintiff had plausibly alleged a breach of fiduciary duty based on comparator tax reports, many of which appear identical to those Trull now offers, and which reflect other ESOPs maintaining only a de minimis cash buffer (and despite defendants' offering comparator reports that tended to show the opposite). *See Schultz,* 2025 WL 563585. Yet *Schultz* offers no meaningful analysis of how its holding comports with Congressional intent or with *Dudenhoeffer'*s holding that ESOP fiduciaries are under no duty to diversify any portion of the "fund's assets." 573 U.S. at 419. Indeed, the decision appears to run counter to both. Accordingly, the Court declines to follow *Schultz*.